# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01553-COA

**PAUL T. BROWN**                                                                                                  **APPELLANT**

**v.**

**HEDERMAN BROTHERS, LLC**                                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PAUL ANDERSON KOERBER |
| ATTORNEYS FOR APPELLEE: | JOHN HOUSTON DOLLARHIDE |
| | JOHN C. HENEGAN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEE |
| DISPOSITION: | AFFIRMED - 05/17/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND GREENLEE, JJ.**

**LEE, C. J., FOR THE COURT:**

¶1.     Paul T. Brown—managing member of Bookmark Publishing LLC—appeals the grant of summary judgment in favor of Hederman Brothers LLC—a commercial printing company in Ridgeland, Mississippi.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

### I.     Two Agreements

¶2.     In September 2010, Hederman Brothers entered into two contracts.  The first was a credit application with Bookmark Publishing, an entity formed by Brown.  The second was a continuing guaranty with Brown, individually.

¶3.    The credit application was signed in anticipation of Bookmark Publishing using Hederman Brothers' services to print wildlife calendars.  Brown was a professional wildlife photographer.  Under the terms of the credit application, Bookmark Publishing would have sixty days to pay all invoices.

¶4.    Under the terms of the continuing guaranty, Brown personally guaranteed

> the payment in full when due, whether by acceleration or otherwise, of any and all indebtedness of [Bookmark Publishing] to [Hederman Brothers] up to the principal amount of [f]orty-five thousand and NO/100 Dollars ($45,000) and, in addition all related interest, attorneys' fees, collection costs and other fees and charges . . . .

The guaranty clearly stated:

> This is a guaranty of payment and not a guaranty of collection; consequently, the liability of the Guarantor shall be absolute and unconditional . . . . [Hederman Brothers] shall not be bound to take any action against [Bookmark Publishing] . . . before [Hederman Brothers] is entitled to payment from the Guarantor in the amount hereby guaranteed.

Moreover the guaranty stated:

> The liability of the Guarantor hereunder shall not be released, discharged, limited or affected in any way by . . . any lack of validity or any unenforceability of any agreement or instrument relating to [Bookmark Publishing's] obligations, . . . any action or omission of any kind or at any time on the part of [Hederman Brothers] in respect of any matter whatsoever, or . . . any other circumstance which might otherwise constitute a defense available to or discharge of [Bookmark Publishing.]

¶5.    Hederman Brothers printed calendars for Bookmark Publishing three years in a row—for 2011, 2012, and 2013.  But in November 2012, while working on the 2013 calendars, Hederman Brothers grew concerned by Bookmark Publishing's failure to pay in full for the 2012 calendars.  Bookmark Publishing's past-due invoices totaled more than

2

$15,000 and had accrued $3,000 in interest. Prior to shipping the 2013 calendars, Hederman Brothers negotiated a payment plan with Bookmark Publishing. Bookmark Publishing agreed to make installment payments to pay off the balance of the 2012 calendars by December 21, 2012. Bookmark Publishing would then begin paying the $30,000 plus for the 2013 calendars in $5,000 biweekly installments, beginning January 2, 2013. In exchange, Hederman Brothers agreed to write off the $3,000 in interest and ship the 2013 calendars to Bookmark Publishing on credit.

## II. Lawsuit

¶6. Bookmark Publishing failed to finish the installment payments for the 2012 calendars and never made a payment on the 2013 calendars. After sending a demand letter, Hederman Brothers sued Brown, individually, in the Circuit Court of Madison County on February 25, 2013. Its complaint alleged Bookmark Publishing had failed to pay $51,930.97.

¶7. Hederman Brothers did not name Bookmark Publishing as a defendant.[1] Yet it brought claims of breach of the credit application and failure to pay an open account, following a written demand. *See* Miss. Code Ann. § 11-53-81 (Rev. 2012). Hederman Brothers also brought a claim based on the continuing guaranty.

¶8. In his answer, Brown asserted counterclaims against Hederman Brothers. He alleged Hederman Brothers fraudulently induced him into the printing arrangement by falsely representing its work product and its ability to market Bookmark Publishing's calendars to

---

[1] At the time Hederman Brothers filed suit, Bookmark Publishing had been dissolved by the Mississippi Secretary of State's Office due to Bookmark Publishing's filing deficiencies. Bookmark Publishing was later reinstated.

3

new customers. Brown also alleged Hederman Brothers failed to perform the printing work "in a professional and reasonably prudent manner." Finally, he claimed Hederman Brothers negligently handled his personal and intellectual property during the printing process.

¶9. As part of discovery, Hederman Brothers deposed Brown. During his deposition, Brown repeatedly expressed his dissatisfaction with Hederman Brothers' printing work and how it handled his original slides.

¶10. Following this deposition, Hederman Brothers moved for summary judgment, relying on Brown's admission that he signed the guaranty and that he had agreed to the payment schedule confirmed by email back in November 2012.

¶11. The circuit court granted this motion in part. The court granted a judgment in favor of Hederman Brothers on its breach-of-guaranty claim against Brown. According to the court, Brown had guaranteed Bookmark Publishing's debt, up to $45,000, plus interest, attorney's fees, and collection costs. Hederman Brothers conclusively proved Bookmark Publishing owed more than $45,000 for services rendered. And Brown failed to pay pursuant to the continuing guaranty. Thus, the court found, as a matter of law, Hederman Brothers was entitled to $45,000, plus eighteen percent contractual interest.[2]

¶12. But the circuit court denied summary judgment on Hederman Brothers' claims on the open account and breach of the credit application. The court found these claims had to be pursued against Bookmark Publishing, which was not a party to Hederman Brothers' suit.

---

[2] In the final judgment, the circuit court found Hederman Brothers was entitled to $45,000, pre-judgment interest of $15,605.94, and attorney's fees of $15,096.93. Post-judgment interest would accrue at the contract rate of eighteen percent per annum.

Later, the court would permit Hederman Brothers to voluntarily withdraw these claims, leaving all of Hederman Brothers' claims against Brown resolved.

¶13. The circuit court also granted summary judgment in favor of Hederman Brothers on all of Brown's counterclaims. The court found these claims too were based on the contract between Hederman Brothers and Bookmark Publishing, so Brown in his individual capacity had no standing to bring suit. Additionally, the court found that Brown failed to present sufficient evidence to support his counterclaims.

¶14. Once the summary-judgment order became final,[3] Brown timely appealed.

**STANDARD OF REVIEW**

¶15. In considering a trial court's grant of a motion for summary judgment, this Court conducts a de novo review and "examines all the evidentiary matters before it—admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (¶7) (Miss. 2001) (citation omitted). The Mississippi Supreme Court has clarified the summary-judgment standard, explaining that "[t]he movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law." *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶11) (Miss. 2013) (citation omitted). The supreme court has further stated that "[t]he movant bear[s] the burden of production if, at

---

[3] Following the entry of the order granting summary judgment, Brown filed a "motion to reconsider." The circuit court denied this motion, as well as granted Hederman Brothers' motion to voluntarily dismiss its open-account and breach-of-credit-application claims. Following these two actions, the circuit court entered a final judgment, as all claims between the parties had been resolved.

trial, [he] would bear the burden of proof on the issue raised. In other words, the movant only bear[s] the burden of production where [he] would bear the burden of proof at trial." *Id*. at 88-89 (¶11) (citations omitted). The supreme court again clarified that "while [d]efendants carry the initial burden of persuading the trial judge that no issue of material fact exists and that they are entitled to summary judgment based upon the established facts, [the plaintiffs] carr[y] the burden of producing sufficient evidence of the essential elements of [their] claim at the summary-judgment stage, as [they] would carry the burden of production at trial." *Id*. at 89 (¶13).

## DISCUSSION

### I. Hederman Brothers' Claim Under the Guaranty

¶16. On appeal, Brown asserts he could not be judged liable under the continuing guaranty without Hederman Brothers first obtaining against Bookmark Publishing "a judgment or any finding of liability or non-payment under 'Credit Application' agreement."

### A. Brown's Unconditional Guaranty

¶17. To support his argument that Hederman Brothers had to pursue payment from Bookmark Publishing first, Brown relies on *Brent v. National Bank of Commerce of Columbus*, 258 So. 2d 430, 434 (Miss. 1972). That case does speak of a guarantor being "secondarily liable to the creditor . . . only by the happening of the prescribed conditions at a time after the contract itself [was] made[.]" *Id.* But under the terms of the contract Brown signed, Hederman Brothers reducing Bookmark Publishing's liability to a judgment was not a "prescribed condition[ ]." *Id.*

¶18. As *Brent* points out, while "a guarantor is an insurer of the ability or solvency of the principal, . . . this characteristic is not present in an absolute guaranty or a guaranty of payment, but only in a conditional guaranty or a guaranty of collection[.]" *Id.* "A conditional guaranty, also termed a 'guaranty of collection[,]' is one under which the creditor can seek performance from the guarantor *only after* the occurrence of some condition such as the condition that the creditor has unsuccessfully and with reasonable diligence sought to collect the debt from the principal debtor." *United States v. Vahlco Corp.*, 800 F.2d 462, 466 (5th Cir. 1986) (emphasis added) (applying Texas law). In contrast, "a guaranty that is absolute and unconditional is one that requires no condition precedent to its enforcement against the guarantor other than mere default by the principal debtor." *Id.* "Such a guaranty is also called a 'guaranty of payment[.']" *Id.*

¶19. The guaranty Brown signed was not conditional. Instead, it clearly stated, "This is a guaranty of *payment* and not a guaranty of *collection*; consequently, the liability of the Guarantor shall be *absolute and unconditional*." (Emphasis added). And it has been the law in Mississippi since at least 1845 that with a guaranty of *payment*, the creditor does not have to "institute any legal proceedings against the debtor" before suing the guarantor. *Wren v. Pearce*, 12 Miss. 91, 98 (1845). Thus, under the terms of the unconditional and absolute guaranty, the only "prescribed condition" to suing Brown under the guaranty was Bookmark Publishing's default. *See Woods-Tucker Leasing Corp. of Ga. v. Kellum*, 641 F.2d 210, 215 n.7 (5th Cir. 1981) (noting an absolute guarantor's liability attaches "immediately upon the default of the debtor").

7

### B. Brown's Default

¶20. Brown clings to the terms of the credit application, which gave Bookmark Publishing sixty days to pay the invoice, to argue the December 31, 2012 invoice was not due—and thus Bookmark Publishing was not in default—when Hederman Brothers filed suit on February 25, 2013.

¶21. But the terms of the credit application—specifically the provision that an invoice is not due for sixty days—had been supplanted by the November 2012 payment plan. The payment plan had all the elements of a valid contract: (1) two or more contracting parties—Bookmark Publishing and Hederman Brothers; (2) consideration—Bookmark Publishing would make installment payments, instead of waiting to pay an invoice, and Hederman Brothers would write off $3,000 in interest and ship the 2013 calendars before receiving payment; (3) an agreement that is sufficiently definite—definite payment terms reduced to writing; (4) parties with legal capacity to make a contract; (5) mutual assent; and (6) no legal prohibition precluding contract formation. *See Rotenberry v. Hooker*, 864 So. 2d 266, 273 (¶25) (Miss. 2003) (listing essential elements of a valid contract).

¶22. Under the payment plan, Bookmark Publishing's first payment for the 2013 calendars was due January 2, 2013. Indisputably, Bookmark Publishing never made this payment—nor any other payment towards the $30,000-plus debt for the 2013 calendars. Instead, Bookmark Publishing clearly defaulted, giving Hederman Brothers the *immediate* right to pursue payment from Brown under the guaranty.

### C. Bookmark Publishing's Defenses

¶23. Still, Brown claims Bookmark Publishing's liability to Hederman Brothers had to first be resolved before going after him personally because Bookmark Publishing had valid defenses to Hederman Brothers' demands for payment, such as shoddy printing work and misrepresentations. But Brown expressly contracted away his ability to assert Bookmark Publishing's defenses to nonpayment.

¶24. Under the terms of the guaranty, Brown agreed his liability "shall not be released, discharged, limited or affected in any way by . . . any action or omission of any kind or at any time on the part of [Hederman Brothers] in respect of any matter whatsoever, or . . . any other circumstance which might otherwise constitute a defense available to or discharge of [Bookmark Publishing.]" In other words, any defenses Bookmark Publishing may have had to not paying the invoices did not excuse Brown. For purposes of the guaranty, all Hederman Brothers had to show was that payment by Bookmark Publishing was due in order to trigger Brown's liability for payment.

¶25. The guaranty itself cautioned Brown to read and consider carefully before agreeing to unconditionally guarantee Bookmark Publishing's debts. And the fact Brown did read and carefully consider the contract is evidenced by his refusal to sign off on all the contract's terms. As one of the terms Brown did agree to was that his liability would not be affected by any of Bookmark Publishing's contract defenses, Bookmark Publishing's alleged contract defenses against Hederman Brothers are not material to Hederman Brothers' suit against Brown under the continuing guaranty.

¶26. The undisputed material facts show: (1) Brown unconditionally guaranteed Bookmark

9

Publishing's debts to Hederman Brothers up to $45,000, plus interest and attorney's fees; (2) Bookmark Publishing's obligation to pay Hederman Brothers more than $45,000 was clearly past due when Hederman Brothers filed suit; and (3) Bookmark Publishing never paid any of this indebtedness. Thus, as a matter of law, Hederman Brothers was entitled to summary judgment on its breach-of-guaranty claim. *See* M.R.C.P. 56(c) (directing "[t]he judgment sought [to] be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").

## II. Brown's Counterclaims

¶27. Brown also appeals the dismissal of his counterclaims.

### A. Brown's Standing

¶28. Brown claims genuine issues of material fact preclude summary judgment on these claims. But he fails to show why these counterclaims belong to *him* and not Bookmark Publishing.

¶29. In fact, Brown emphasizes in his brief that it was his legally distinct limited-liability company, and not he, that entered into the contract for printing services with Hederman Brothers. As this is the case, we agree with the circuit court that Brown in his individual capacity has no standing to sue Hederman Brothers based on the printing arrangement with Bookmark Publishing. Specifically, Brown as an individual had no standing to claim Hederman Brothers fraudulently induced Bookmark Publishing into the printing arrangement or that Hederman Brothers failed to perform services for Bookmark Publishing in a

10

professional manner. If Brown wanted to pursue those claims, he had to join his company, Bookmark Publishing, as a defendant, which he did not do.

### B. Brown's Burden of Production

¶30. The only counterclaim for which Brown possibly may have standing is the claim Hederman Brothers mishandled his "personal and intellectual property."

¶31. Because Brown would have born the burden of proof at trial on this counterclaim, he bore the burden of production when facing Hederman Brothers' summary-judgment motion. *See Karpinsky*, 109 So. 3d at 88-89 (¶11). Under this burden, to survive summary judgment, Brown had to "make a showing sufficient to establish the existence of [each] element essential to [his] case[.]" *Id.* at 89 (¶11) (quoting *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010)).

¶32. Here, we find Brown has not even articulated what the essential elements of his claim are, let alone pointed to evidence in the record that sufficiently supports each one of them. As the supreme court has consistently held, "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Buckel*, 47 So. 3d at 153 (¶10) (quoting *Brown v. Credit Ctr. Inc.*, 444 So. 2d 358, 362 (Miss. 1983)). All Brown has offered to support his counterclaim are broad assertions that Hederman Brothers has mishandled or misappropriated his personal and intellectual property. He has not enunciated what legal theory he is traveling under. And he has offered no details or precise facts.

¶33. Therefore, we affirm the grant of summary judgment dismissing this counterclaim,

along with the dismissal of the other counterclaims for which Brown as an individual lacked standing.

¶34.   **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.  JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**