# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 4, 2024

Lyle W. Cayce
Clerk

_____

No. 23-60363

_____

NORTH AMERICAN SAVINGS BANK, F.S.B.,

*Plaintiff—Appellee*,

*versus*

PATRICK NELSON,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:21-CV-184

_____

Before CLEMENT, ENGELHARDT, and WILSON, *Circuit Judges*.

CORY T. WILSON, *Circuit Judge*:

This diversity case arising under Mississippi law hinges on whether a loan guaranty was properly assigned to Plaintiff North American Savings Bank, FSB (NASB), such that NASB could sue guarantors, and brothers, Patrick and Brian Nelson for its breach. Assuming the guaranty was properly assigned, another issue is whether Patrick could assert certain equitable defenses to defeat liability. The district court entered summary judgment for NASB, concluding that the loan guaranty was properly assigned and that Patrick could not assert equitable defenses belonging to the borrower. The

No. 23-60363

district court via a separate order awarded NASB nearly $6 million in damages. We affirm.

## I.

NB Taylor Bend, DST (Taylor Bend), a Delaware statutory trust, borrowed $13 million from Prudential Mortgage Capital Company, LLC (Prudential) to acquire property, including Taylor Bend Apartments (the Apartments), in Lafayette County, Mississippi. The financing package (collectively, the Loan Documents)[1] was fully executed, with Patrick signing on behalf of Taylor Bend, in January 2015. Taylor Bend pledged the Apartments as security for the loan.

Patrick and Brian Nelson both executed an Indemnity and Guaranty Agreement (the Guaranty) in December 2014, personally guaranteeing the loan. The Guaranty provided:

> This is a guaranty of payment and performance and not of collection. The liability of [the Nelsons] under this [Guaranty] shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person (including, without limitation, other guarantors, if any), nor against the collateral for the Loan. Guarantors waive any right to require that an action be brought against Borrower or any other person . . . .
>
> In the event, on account of any provisions of the U.S. Bankruptcy Code . . . or any other debtor relief law . . . [that] Borrower shall be relieved of or fail to incur any debt, obligation or liability as provided in the Loan Documents, [the Nelsons] shall nevertheless be fully liable therefor. In the event of an

---

[1] Most relevant here, the Loan Documents included a Loan Agreement, Promissory Note, Deed of Trust (the Security Instrument), and, as will be discussed *infra*, the Guaranty executed by the Nelsons.

2

Event of Default under the Loan Documents, Lender shall have the right to enforce its rights, powers and remedies . . . in any order . . . .

If the indebtedness and/or obligations guaranteed hereby are partially paid or discharged by reason of the exercise of any of the remedies available to Lender, this [Guaranty] shall nevertheless remain in full force and effect, and [the Nelsons] shall remain liable for all remaining indebtedness and obligations . . . .

The Guaranty also included a "No Limitation on Liability" clause:

[Nelsons] hereby consent and agree that Lender may at any time . . . without further consent from [the Nelsons] do any of the following events, and the liability of [the Nelsons] under this [Guaranty] shall be unconditional and absolute and shall in no way be impaired or limited by any of the following events[:]

. . .

any sale, assignment or foreclosure of the Note, the Security Instrument or any of the other Loan Documents or any sale or transfer of the [p]roperty.

. . .

No such action which Lender shall take or fail to take in connection with the Loan Documents or any collateral for the Loan, nor any course of dealing with Borrower or any other person, shall limit, impair or release [the Nelsons'] obligations hereunder, affect this [Guaranty] in any way or afford [the Nelsons] any recourse against Lender.

The Guaranty also extended to bind "the heirs, personal representatives, successors and assigns" of the Nelsons and benefit the "respective heirs, successors and assigns [of the Lender]."

The Loan Agreement expressly included "the Indemnity and Guaranty Agreement given to Lender by Patrick Nelson and Brian Nelson" among the Loan Documents. The Loan Agreement also provided that in the event of "any petition for bankruptcy . . . [or] reorganization . . . by a Borrower," the loan "shall be fully recourse to Borrower," i.e., Prudential could accelerate the full balance owed. And the Loan Agreement stated that such an event would not "reduce, release, relieve, limit or impair in any way whatsoever the [Guaranty] . . . ." Moreover, the Promissory Note, which is separately referenced in the Guaranty, stated that "[a]ll of the terms and provisions of the Loan Agreement . . . and other Loan Documents are incorporated herein by reference."

After the Loan Documents were executed, Prudential assigned the loan to Liberty Island Group I, LLC (Liberty) via an "Omnibus Assignment" that referenced the Loan Documents:

> PRUDENTIAL [] . . . does hereby absolutely sell, transfer, assign, set over and convey to LIBERTY [] . . . all right, title and interest of Assignor in and to the Mortgage Loan identified on the Mortgage Loan Schedule . . . including:
>
> 1. The Mortgage Loan Documents related to the mortgage loan . . . evidenced and secured by, among other things, that certain Deed of Trust and Assignment of Rents and Leases and Security Agreement executed by [Taylor Bend], dated January 16, 2015.
>
> . . .
>
> 2. Each item constituting the Loan Origination File with respect to the Mortgage Loan (in each case, to the extent of Assignor's right, title and interest therein and to the extent assignable)[.]

Liberty, in turn, assigned the loan to NASB.

No. 23-60363

By May 2020, Taylor Bend struggled to find tenants for the Apartments due to the COVID-19 pandemic. Taylor Bend and the Nelsons informed NASB of their resulting financial problems, and the parties executed a forbearance agreement "whereby NASB agreed to suspend debt service payments from the months of June 2020, July 2020, and August 2020."

But Taylor Bend's difficulties continued well after those three months. In May 2021, NASB declared Taylor Bend to be in default after the borrower continually failed to make timely loan payments. That June, after Taylor Bend failed to cure its default, NASB exercised its right to accelerate the debt, making the $12,375,074.16 loan balance due immediately.

In August 2021, Taylor Bend converted its business to a limited liability company, renamed NB Taylor Bend 2, LLC, pursuant to § 18-214 of the Delaware Limited Liability Company Act. *See* DEL. CODE ANN. 6 § 18-214(f) (2012).[2] Such a conversion was contemplated in the Loan Agreement "upon the notice from Lender that an Event of Default ha[d] occurred and [was] continuing," or that Taylor Bend was in imminent risk of default. After conversion, Taylor Bend filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Mississippi. NASB quickly moved for relief from the automatic stay in the bankruptcy case and demanded payment from the Nelsons under the Guaranty in the amount of $12,519,746.73. After the Nelsons failed to respond, NASB filed this action against them in the United States District

---

[2] The Delaware law allows for entity conversion to a limited liability company and provides that "all rights of creditors and all liens upon any property of such other entity" are "preserved unimpaired . . . and may be enforced against [the new LLC] to the extent as if said debts, liabilities and duties had originally been incurred or contracted by in its capacity as a domestic limited liability company." § 18-214(f).

Court for the Northern District of Mississippi, asserting claims for breach of the Guaranty, for recovery of the $12,519,746.73 loan balance, and for declaratory judgment.

In September 2021, the bankruptcy court lifted the automatic stay, and NASB proceeded with a foreclosure sale of the Apartments. Nor-Am Service Corporation (Nor-Am), an entity affiliated with NASB, acquired the Apartments for $8 million. A few months later, Nor-Am sold the property to a third party, Kirkland Properties (Kirkland), for $10.6 million. NASB credited the $8 million in proceeds from the foreclosure sale to Nor-Am against the Nelsons' debt; it did not credit any proceeds from the second sale to Kirkland.

After completing the foreclosure sale to Nor-Am, NASB moved for partial summary judgment, seeking a declaration of liability on its breach-of-guaranty claim against the Nelsons. Brian also filed a motion for summary judgment against Patrick. Brian asserted that his interest in the Apartments had been assigned to Patrick after the brothers separated their business interests in 2018 and that Patrick had agreed to indemnify Brian for any adverse judgment, costs, fees and expenses stemming from litigation over the Apartments.

The district court entered partial summary judgment for NASB, holding the Nelsons "breached the [G]uaranty and thus owe[d] to [NASB] the amount remaining due on the subject loan." The court determined that the Guaranty was "freely assignable" and that Prudential adequately assigned all of its rights and interests to Liberty, which in turn assigned all of its rights and interests to NASB, including those conferred by the Guaranty. And the court concluded that the defenses raised by the Nelsons were "unavailable given the borrower's absence from this litigation." Finally, the court granted Brian's motion for summary judgment against Patrick, ruling

that the indemnity agreement between the brothers was valid and binding and that Patrick was contractually required to indemnify Brian for "any and all obligations arising out of or relating to this litigation."[3]  The court also granted NASB's request for a subsequent hearing to determine NASB's and Brian's damages.

After the court heard argument on damages, it issued a subsequent memorandum opinion, awarding NASB nearly $6 million in damages plus post-judgment interest.  In so doing, the court rejected the Nelsons' argument that NASB was required to credit $2.6 million from the sale of the Apartments to Kirkland as an offset against the Nelson's debt:

> [NASB] was not required to foreclose on the [Apartments] at all and could have instead simply have filed suit regarding the loan . . . .  [A]ll that was required of [NASB], given that [NASB] chose to foreclose on the [Apartments], was to give [the Nelsons] credit for the price paid at the foreclosure sale. [NASB] did so. [The Nelsons'] argument that they are entitled to a reduction in the amount of damages because the [Apartments] [were] subsequently resold is not supported by Mississippi law and is without merit.

The court also granted Brian's unopposed motion to require Patrick to indemnify additional costs stemming from the litigation.

Patrick now appeals, contending that there is a genuine dispute of material fact as to whether the Guaranty was validly assigned to NASB. Patrick alternatively asserts that the district court erred by not considering his equitable defenses to enforcement of the Guaranty.  Finally, Patrick

---

[3] Patrick does not contest the district court's holding as to the indemnity agreement or its ruling in favor of Brian.

argues that the district court erred by not reducing the debt owed to NASB by an additional $2.6 million, from the sale to Kirkland.

## II.

"We review grants of summary judgment *de novo*, applying the same standard as the district court." *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "All reasonable inferences must be viewed in the light most favorable to the party opposing summary judgment, and any doubt must be resolved in favor of the non-moving party." *La. Crawfish*, 852 F.3d at 462. A "dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (alterations accepted) (quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

Sitting in diversity, we apply the substantive law of the forum state, here, Mississippi. *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 258 (5th Cir. 2013); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938). A district court's determination of state law is reviewed *de novo*. *Learmonth*, 710 F.3d at 258. We distill state law by looking to the decisions of the state's highest court. *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018). But when no case law from the state's supreme court is on offer, we may look to decisions of the intermediate appellate court, barring a reason to think the state supreme court would decide otherwise. *Id.*

No. 23-60363

## A.

Patrick contends that there is a genuine dispute of material fact as to whether Prudential validly assigned the Guaranty to Liberty, and by extension, whether Liberty validly assigned it to NASB, such that NASB may validly assert an action pursuant to the Guaranty. Patrick urges that the "omnibus" assignment from Prudential to Liberty neither encompassed Prudential's interest in Patrick's Guaranty nor purported to assign that interest.

We discern no genuine dispute of material fact. The Guaranty plainly states that it binds "Guarantors and . . . assigns of Guarantors and shall inure to the benefit of [Prudential] and the . . . assigns [of Prudential]." And Prudential assigned its "right, title, and interest" in the Loan Documents, which the district court correctly found include the Guaranty, to Liberty. Indeed, the Loan Agreement explicitly references "the Indemnity and Guaranty Agreement given to Lender [i.e., Prudential] by Patrick Nelson and Brian Nelson" as part of the financing package. Then, Liberty validly assigned the loan to NASB, which Patrick does not contest, leaving NASB to stand in Prudential's stead vis-à-vis the Loan Documents and the Guaranty. Patrick's contrary contentions fail to raise a genuine dispute such that a "reasonable jury could return a verdict for [him]." *Parrish*, 917 F.3d at 378.

## B.

In the alternative, Patrick contends the district court erred by declining to consider his equitable defenses to NASB's enforcing the Guaranty, specifically, breach of the forbearance agreement, good faith and fair dealing, and negligent loan administration. But the district court correctly relied on *Brown v. Hederman Brothers, LLC*, 207 So. 3d 698 (Miss. Ct. App. 2016), to hold that the "equitable defenses raised by [Patrick] are unavailable given the borrower's absence from this litigation," and further,

that NASB was not required to join Taylor Bend to proceed with this action against the Nelsons.[4]

Under *Brown*, "a guaranty that is absolute and unconditional is one that requires no condition precedent to its enforcement against the guarantor other than mere default by the principal debtor." 207 So. 3d at 702; *see Woods-Tucker Leasing Corp. of Ga. v. Kellum*, 641 F.2d 210, 215 n.7 (5th Cir. 1981); *see also Kennedy v. Hall*, 680 F. App'x 269, 270–71 (5th Cir. 2017) ("It has long been the law in Mississippi that with a guaranty of payment, the guarantor is immediately liable upon the debtor's default."). Put differently, when a guaranty is one "of payment . . . the creditor does not have to institute any legal proceedings against the debtor before suing the guarantor." *Brown*, 207 So. 3d at 702–03 (internal quotations and citation omitted). Applying *Brown*'s reasoning here, "[f]or purposes of the [G]uaranty, all [NASB] had to show was that payment by [Taylor Bend] was due in order to trigger [Patrick's] liability for payment." *Id.* NASB did so and could thereafter properly sue to enforce Patrick's obligations under the Guaranty.

Nonetheless, Patrick contends that he may assert equitable defenses available to Taylor Bend. But like the guarantor in *Brown*, Patrick clearly waived any right to interpose defenses that belonged to Taylor Bend: The Guaranty makes clear that "[Nelson] waive[d] any right to require that an action be brought against Borrower or any other person" and that "[n]o such

---

[4] The conversion of NB Taylor Bend, DST to NB Taylor Bend 2, LLC under Delaware law is of no moment here. Patrick contends in passing that "[t]his is not [a] distinction without a difference, because the LLC and DST are not the same entity," such that the LLC is not a "Borrower" within the Loan Documents. But he fails adequately to brief any issue related to the entity conversion, such that his argument is waived. *Ramey & Schwaller L.L.P. v. Zions Bancorporation NA*, 71 F.4th 257, 261 n.3 (5th Cir. 2023). Besides, as NASB points out, the conversion was plainly contemplated by the Loan Agreement, and Delaware law makes clear that the converted LLC stands in place of the former entity.

No. 23-60363

action which Lender shall take or fail to take in connection with the Loan Documents . . . shall limit, impair or release [Nelson's] obligations hereunder . . . ." *Cf. Brown*, 207 So. 3d at 703–04. Thus, the district court did not err in concluding that Patrick could not raise the asserted defenses. Rather, Patrick's Guaranty was one of payment, it was "absolute and unconditional," and he waived his right to bring the defenses he now presses.[5]

Given the clarity of the Guaranty, as viewed through the lens of *Brown*, Patrick offers no genuine dispute of material fact that frustrates summary judgment for NASB.

## C.

Patrick last argues that the district court erred in its second memorandum opinion, awarding NASB damages and post-judgment interest, by not applying a $2.6 million credit from Nor-Am's post-foreclosure sale of the Apartments to Kirkland. His argument rests on two premises: (1) the court should have included the offset of $2.6 million when considering Patrick's equitable defenses to liability due to NASB's "bad faith and negligent administration," which depressed the property's resale value; and (2) the "subsequent sale constitutes a mitigation of damages that must be considered and credited against the deficiency amount" because otherwise NASB would receive an "inequitable . . . windfall."

---

[5] Patrick asserts that *Morgan v. Trustmark National Bank*, 99 So. 3d 263 (Miss. Ct. App. 2012), shows that Mississippi law does not preclude a guarantor from asserting defenses personal to the guarantor and that the *Morgan* court addressed, and rejected, the guarantor's defenses on the merits. But *Morgan* is clearly inapposite. The guarantors there raised defenses arising from their signing the guaranty, i.e., they contended that they were fraudulently induced to sign it. *Morgan*, 99 So. 3d at 267. In contrast, Patrick attempts to raise defenses the borrower could have interposed to avoid liability under the Loan Documents, not to avoid the Guaranty personally.

Both premises are faulty. As to the equitable defenses, "unlike suits where the lender sues the primary borrower, an individual guaranty . . . does not require foreclosure or fairness of price. The guarantor is immediately liable upon the borrower's . . . default." *Bosarge v. LWC MS Props. LLC*, 158 So. 3d 1137, 1143 n.5 (Miss. 2015). Patrick offers no support for his contention that he, as guarantor, may yet raise equitable defenses as to the foreclosure's sale's price.

Moreover, quoting *Mississippi Valley Title Ins. Co. v. Horne Construction Co.*, 372 So. 2d 1270, 1272 (Miss. 1979), Patrick contends that Mississippi law generally requires that a "mortgagee has endeavored to collect [a deficiency judgment] out of the land [beforehand]." In Patrick's view, "there is no functional difference in this case between [Taylor Bend] and Patrick, in his capacity as guarantor," such that NASB had an obligation to mitigate its damages via the subsequent sale to Kirkland.

Patrick is incorrect; NASB had no obligation to mitigate its damages with respect to the guarantors to reduce the deficiency judgment. Mississippi law permits a creditor to "reduce [its] claim to judgment, foreclose, or otherwise enforce the claim . . . by any available judicial procedure." Miss. Code Ann. § 75-9-601(a)(1); *see Devine v. Cardinal Health 110, LLC*, 350 So. 3d 1107, 1114 (Miss. Ct. App. 2022) (citing *Rea v. O'Bannon*, 158 So. 916, 918 (Miss. 1935)). Though Patrick contends that "[t]he general rule applicable for mortgage deficiency judgments also supports the equitable offsets claimed by the putative guarantor here," he provides no Mississippi case supporting such a contention. And to the extent Patrick urges us to extend Mississippi law, we decline to do so. *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 272 (5th Cir. 2000) (admonishing federal courts not to "expand state law beyond its presently existing boundaries"); *see also Meador*, 911 F.3d at 264 (5th Cir. 2018) ("If guidance from state cases is lacking, it is not for us to adopt innovative theories of recovery under state

law.") (internal quotations and citation omitted).  Thus, as correctly held by the district court, NASB had no duty to mitigate its damages and provide an offset in favor of the Nelsons by virtue of its third-party sale of the Apartments to Kirkland.

## III.

The Guaranty was properly assigned from Prudential to Liberty and from Liberty to NASB.  NASB could therefore properly bring its claims for breach of guaranty and declaratory judgment against the Nelsons to recover the loan deficiency.  Moreover, under Mississippi law, Patrick may not interpose equitable defenses that were available only to Taylor Bend to defeat his liability under the Guaranty.  And, for similar reasons, the deficiency judgment awarded to NASB pursuant to the Guaranty need not be reduced by the third-party sale of the Apartments to Kirkland.  NASB had no duty to mitigate its damages under either Mississippi law or the terms of the Guaranty.  Considering the foregoing, the judgment of the district court is

AFFIRMED.